IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TIMOTHY H.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 3:21-cv-00899-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff brings this action for judicial review of the Commissioner of Social Security's final decision denying his application for disability insurance benefits ("DIB") under the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff filed an application for DIB on September 25, 2018, alleging a disability onset date of March 31, 2016. Tr. 18.[2] Plaintiff's claim was denied initially and upon reconsideration. *Id.* Following a hearing, an administrative law judge ("ALJ") issued an unfavorable decision. Tr. 18–31. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–4. This appeal followed.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.
[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

Plaintiff argues that the ALJ erred by (1) discounting Plaintiff's symptom testimony, (2) improperly evaluating medical opinions, (3) improperly construing Plaintiff's residual functional capacity ("RFC"),[3] (4) failing to identify significant jobs in the national economy, and (5) failing to consider a higher age category. Because the Commissioner's final decision is based on proper legal standards and supported by substantial evidence in the record, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's final decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1114–15 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

---

[3] Plaintiff concedes that his argument regarding the RFC fails if the Court affirms the ALJ's conclusions as to Plaintiff's symptom testimony and the medical evidence. Pl.'s Reply 8, ECF No. 16. Because the Court affirms the ALJ's conclusions on those issues, the Court does not separately address Plaintiff's argument regarding the RFC. Further, based on the discussion herein, the Court finds that the ALJ properly construed Plaintiff's RFC by taking into account limitations for which there is record support. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

## **DISCUSSION**

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2012). The initial burden of proof rests on the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's RFC, age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner shows that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

At step two here, the ALJ found that Plaintiff had the following severe impairments: non-repairable chronic rotator cuff tear, left knee osteoarthritis, and obesity. Tr. 21. The ALJ found that Plaintiff can

> perform light work . . . except [he] would not be able to lift or carry more than 10 pounds with his right upper extremity; [Plaintiff] would be further limited to frequent crouching and kneeling, and to no more than occasional crawling; [he] would need to avoid climbing ropes, ladders or scaffolds; and is limited to no more than occasional reaching in any direction with his right upper extremity.

Tr. 22. Based on the vocational expert's testimony, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including Cashier II, Inspector of Plastic Products, and Host. Tr. 29–30. The ALJ therefore determined that Plaintiff was not disabled. Tr. 30.

**I. Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ erred by not fully crediting his subjective symptom testimony as true. Pl.'s Br. 9–13, ECF No. 11. Absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of his symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). But the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). The ALJ may consider several factors, including:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Ultimately, "[i]f the ALJ's credibility finding is supported by substantial evidence in the record,

[this Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff alleges debilitating physical symptoms resulting from his right shoulder rotator cuff tear and left knee osteoporosis. *See* Pl.'s Br. 3–5, 10–13. His right shoulder pain began in 2016 when he broke up a fight while working as a prison corrections officer. *Id.* at 3; tr. 50–51. He underwent two surgeries in 2016 and 2017 for rotator cuff repair and bicep tenodesis. Tr. 27, 51, 321. After each surgery, Plaintiff went back to his job for a period of 120 days, performing modified work while he recovered from surgery and during the pendency of his workers compensation claim. Tr. 51, 54–55. His duties included sitting in a chair and answering the phone with his left hand. Tr. 55, 62–63. Plaintiff testified that he can lift about thirty to forty pounds with his left arm, but is limited to ten to fifteen pounds with his right arm. Tr. 66. He cannot hold his right arm up for any length of time and has no strength to lift anything when his arm is extended out. Tr. 60, 67–68. Lifting his right arm overhead is uncomfortable and using a keyboard causes his shoulder to throb and ache. Tr. 68, 70. Plaintiff's wife helps him around the house for things he cannot do, like shaving or carrying heavy objects. Tr. 57, 68–69.

Regarding his left knee pain, Plaintiff testified that his knee starts throbbing after about ten minutes of standing, with pain levels from five to ten on a one to ten pain scale. Tr. 71. He goes for walks as much as he can but has recently been limited in his ability to walk for distances longer than about a block due to increased pain. Tr. 59, 70, 72. Plaintiff testified that he cannot kneel, crouch, or bend his knee, and going up and down stairs is very painful. Tr. 72. Plaintiff testified to daily activities including house chores, laundry, cooking meals, mowing the lawn, grocery shopping, and going to church. Tr. 59–60; *see also* tr. 258–61.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 23. The ALJ discounted Plaintiff's symptom testimony as inconsistent with (1) Plaintiff's conservative treatment, (2) Plaintiff's improvement with treatment, (3) the objective medical evidence, and (4) Plaintiff's activities of daily living. Tr. 27–28.

Plaintiff argues that the ALJ erred in finding that Plaintiff underwent only conservative treatment and that his pain improved with treatment. Pl.'s Br. 10–11. Plaintiff notes that his shoulder has been declared irreparable, and points to treatment records showing that his knee symptoms have gotten worse. *Id.* Plaintiff asserts that "periods of improvement are not incompatible with disability." *Id.* at 11. After Plaintiff's second shoulder surgery, Plaintiff saw his orthopedic surgeon, Dr. McWeeney, for a closing report in September 2017. Tr. 321. Plaintiff reported feeling "much better after the second surgery but still has posterior pain [that] is worse with abduction and extension." *Id.* Plaintiff's physical exam revealed "4/5 strength of external rotation, supraspinatus, forearm supination on the right and 5/5 strength on the left. He has bilateral 5/5 strength of his deltoids, elbow flexion, and internal rotation." *Id.* Dr. McWeeney indicated that Plaintiff is "medically stationary," explaining that Plaintiff was "greatly improved but he is not going to be able to get back to his previous level of occupation as a prison guard." *Id.*

Plaintiff returned to Dr. McWeeney a year and a half later in April 2019 for "significant pain that is worse with any kind of use" of his right arm. Tr. 359. His physical exam revealed 4-/5 strength of the right supraspinatus and external rotators and 5/5 strength of internal rotators, deltoids, and biceps. *Id.* Dr. McWeeney opined that further surgical intervention was likely necessary because of Plaintiff's pain. *Id.* Plaintiff also presented to Dr. Ellison for a physical exam in April 2019. Tr. 325. Plaintiff's exam revealed very limited range of motion in the right shoulder

and a limited ability to reach with his right hand. Tr. 326. He was able to hold and manipulate large and small objects with either hand. *Id.* His motor strength was normal throughout with no atrophy. *Id.* Dr. Ellison assessed chronic pain in the right should with very limited range of motion and left knee pain. Tr. 327. In July 2019, Dr. McWeeney reviewed a recent MRI of Plaintiff's shoulder which showed a massive rotator cuff tear but no significant osteoarthritis changes. Tr. 360. Dr. McWeeney determined Plaintiff was not a "candidate for reverse should arthroplasty because he is not so arthritic yet." *Id.* Dr. McWeeney advised Plaintiff that he could continue with range of motion strengthening exercises or consider an arthroscopic superior capsule reconstruction to lessen his pain. *Id.* Plaintiff indicated he would like to consider the surgical option. *Id.*

Plaintiff did not return to Dr. McWeeney until a year later in July 2020. Tr. 381. Plaintiff's physical exam revealed "excellent range of motion," 4/5 strength of supraspinatus and external rotation, and 5/5 strength of internal rotation, deltoids, biceps, and forearm supination. *Id.* Dr. McWeeney again indicated that Plaintiff is medically stationary and noted no significant change in his examination or functional level. *Id.* Further treatment options were not discussed. *Id.* In September 2020, Plaintiff presented to his primary care doctor with left lateral knee pain and his doctor ordered an x-ray. Tr. 401–02. The x-ray revealed tricompartmental osteoarthritis with moderate to severe medical compartmental joint space narrowing and moderate join effusion. Tr. 406. Plaintiff visited Dr. McWeeney in October 2020 for left knee pain and Dr. McWeeney confirmed a diagnosis of unilateral primary osteoarthritis of the left knee and discussed at-home exercises with Plaintiff. Tr. 38–39.

The ALJ noted that "other than [Plaintiff's] surgeries on his right shoulder in 2016 and 2017, treatment during the relevant period for the claimant's alleged impairments were limited to conservative treatment options." Tr. 27. The record revealed only routine visits with no

7 – OPINION AND ORDER

hospitalizations. *Id.* The ALJ went on to conclude that the record in fact shows improvement in Plaintiff's shoulder with treatment. *Id.* The ALJ noted Plaintiff's 2017 post-surgery treatment notes that showed "much improvement" in Plaintiff's shoulder pain. Tr. 27, 323. Plaintiff reported that he was able to do light duty work and recovered full range of motion. *Id.* The ALJ noted that later, in September 2018, Plaintiff reported feeling well overall and that he was very active in retirement. Tr. 27, 341.

The Court recognizes that Plaintiff's shoulder pain did not resolve entirely. Indeed, Plaintiff returned to Dr. McWeeney after his surgeries with complaints of worsening shoulder pain. However, those exams did not reveal significant changes in Plaintiff's shoulder strength nor any significant osteoarthritis changes. *See* tr. 359, 360, 381. Further, Plaintiff's most recent July 2020 visit with Dr. McWeeney for his shoulder pain revealed "excellent range of motion" and no significant changes in his functional level. Tr. 36, 381. The Court also notes that Plaintiff did not seek treatment for a year and a half after his surgeries. He had a few visits in 2019 regarding increased pain where discussions of further surgery took place. Plaintiff did not return to Dr. McWeeney until a year later in July 2020, and further treatment options were not mentioned. *Id.* The Court also notes a lack of treatment during the relevant time period for Plaintiff's left knee pain. The evidence therefore supports the ALJ's conclusion that Plaintiff's shoulder impairment improved with treatment, and that aside from his two surgeries, he engaged in conservative, routine treatment for his conditions. The ALJ therefore provided clear and convincing reasons to discount Plaintiff's testimony as to the severity of his symptoms.

Plaintiff next argues that the ALJ failed to fully consider the record as to Plaintiff's left knee symptoms by relying only on primary care notes finding no abnormality and omitting a recent x-ray that confirmed severe osteoarthritis. Pl.'s Br. 12. This argument is belied by the fact that the

ALJ identified Plaintiff's left knee osteoarthritis as a severe impairment and appropriately limited Plaintiff to no more than frequent crouching or kneeling, occasional crawling, and avoiding climbing ropes, ladders, or scaffolds. Tr. 22, 27. Further, the ALJ referred to Plaintiff's diagnosis of left knee pain multiple times in his decision and specifically referenced Plaintiff's x-ray showing left knee osteoarthritis. Tr. 25–27.

Finally, Plaintiff argues that the ALJ erred in finding Plaintiff's testimony incompatible with his activities of daily living. Pl.'s Br. 12. An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112 (quoting *Lingenfelter*, 504 F.3d at 1040). Plaintiff testified that his right shoulder and left knee pain are disabling. Because of his right shoulder pain, Plaintiff testified that he cannot carry items weighing more than 10 to 15 pounds, cannot hold his arm up, and requires his wife's help to do things around the house. Tr. 57, 60, 66–69. Plaintiff testified that his left knee pain severely limits his ability to walk or stand for longer than 10 minutes and he cannot kneel, crouch, or bend his knee. Tr. 71–72.

The ALJ referred to several of Plaintiff's activities as inconsistent with Plaintiff's allegations of disability, including: Plaintiff's ability to care for personal hygiene, prepare meals, and perform household chores including mowing the lawn, house repairs, and laundry; caring for his dog; operating a motor vehicle and using a computer; riding his bicycle; regularly attending church; and going for walks. Tr. 28. The ALJ found that the performance of these activities was in "direct contrast" to Plaintiff's symptom allegations. *Id.* The ALJ did not err in considering the inconsistency between Plaintiff's level of activity and his claims of debilitating symptoms as part of the ALJ's credibility determination. *See Molina*, 674 F.3d at 1112.

Overall, while Plaintiff offers an alternate interpretation of the evidence, the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony which are supported by substantial evidence in the record.[4] *See Batson*, 359 F.3d at 1193. Further, the ALJ appropriately accounted for Plaintiff's impairments in the RFC. Accordingly, the ALJ's evaluation of Plaintiff's symptom testimony is affirmed.

## II. Medical Evidence

Plaintiff next argues that the ALJ erred in weighing the medical evidence. Pl.'s Br. 13–16. Under the new regulations for evaluating medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ must evaluate all medical opinions and prior administrative medical findings for persuasiveness. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). In doing so, an ALJ considers the following factors: (1) supportability, as shown by relevant evidence and explanation; (2) consistency with the record as a whole; (3) the relationship between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920c(c). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. 20 C.F.R. § 416.920c(b)(2). These regulations displace the Ninth Circuit's standard requiring an ALJ to provide "specific and legitimate" reasons for rejecting a treating or examining doctor's opinions. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Now, an

---

[4] Plaintiff argues that the ALJ erred by referring to irrelevant portions of the medical record, such as having good cardiac and respiratory health, no swollen extremities, intact cranial nerves, and good spinal range of motion. Pl.'s Br. at 11–12. Even if the ALJ did err, the Court finds it harmless because he provided multiple other valid reasons for discrediting Plaintiff's symptom allegations. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (explaining that an error in an ALJ's subjective symptom analysis is harmless where an ALJ provides at least one valid reason for discounting testimony).

ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence." *Id.* at 787.

Plaintiff asserts that the ALJ erred in disregarding the medical opinions of Dr. McWeeney and Dr. Ellison. The Court notes, however, that Dr. McWeeney and Dr. Ellison did not provide medical opinions as defined by regulation. A medical opinion is "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in his ability to perform the physical or mental demands of work activities. 20 C.F.R. § 404.1513(a)(2). Judgments about the nature and severity of a claimant's impairments, medical history, clinical findings, diagnosis, treatment, and prognosis are considered "other medical evidence." *Id.* § 404.1513(a)(3).

Dr. Ellison performed a physical examination of Plaintiff in April 2019. Tr. 325–27. Plaintiff's exam revealed a "very limited ability to reach" with his right hand but normal with the left; ability to hold, grasp, and grip large and small objects with both hands; and no crepitation, effusion, instability, or limited range of motion in either knee. Tr. 326. Dr. Ellison's assessment and diagnoses included: "chronic pain in the right shoulder . . . with very limited range of motion, history of two attempted surgical repairs of a rotator cuff tear, has been told he will eventually need a total shoulder replacement;" "left knee pain with history of Osgood-Schlatter disease;" and obesity. Tr. 327. Dr. Ellison did not provide an opinion as to any functional limitations regarding Plaintiff's ability to perform work activities. Regarding Dr. McWeeney, the Court already discussed his treatment notes in detail above. Dr. McWeeney's treatment notes similarly contain physical exam findings and diagnoses, but he did not provide an opinion as to any functional limitations regarding Plaintiff's ability to perform work activities. Dr. Ellison's physical exam and Dr. McWeeney's treatment notes are, instead, "other medical evidence" that

11 – OPINION AND ORDER

the ALJ was obligated to consider as part of his review of the record.[5]

Plaintiff next argues that the ALJ erred by giving weight to the state agency medical consultant opinions. Pl.'s Br. 14–16. Specifically, Plaintiff contends that the state agency doctors improperly considered the objective medical evidence, including the findings of Dr. McWeeney and Dr. Ellison, and that the state agency doctors' opinions are inadequate because they did not have Plaintiff's x-ray from 2020 showing left knee osteoarthritis. *Id.*

In May and December 2019, the state agency doctors opined that Plaintiff was limited to light work with additional postural and manipulative limitations. Tr. 90–92, 101–03. Both doctors limited Plaintiff to lifting and carrying 20 pounds occasionally and 10 pounds frequently. *Id.* They found Plaintiff able to stand or walk about 6 hours in an 8-hour day and sit about 6 hours in an 8-hour day. *Id.* They further limited Plaintiff to occasional use and reaching with the right upper extremity, frequent kneeling and crouching, occasional crawling, and never climbing ladders, ropes, or scaffolds. *Id.* The ALJ found the state agency doctors' opinions persuasive as consistent and supported by the record. Tr. 28. Specifically, the ALJ found their limitations consistent with the objective medical evidence and Plaintiff's treatment records which showed improvement in

---

[5] The Court notes that multiple times in his briefing Plaintiff misrepresents that Dr. Ellison and Dr. McWeeney provided functional work limitations, including an inability to reach in all directions or lift more than 10 pounds overhead with his right arm, and an inability to kneel, squat, or crouch. Pl.'s Br. 4, 5, 14–16; Pl.'s Reply 8. In each of these instances, however, Plaintiff cites to either his own self-reports or Dr. McWeeney and Dr. Ellison's exam notes that make no mention of such limitations. For example, multiple times Plaintiff cites to page 257 of the record, which is his disability application where he writes that he cannot lift more than 10 pounds with his right arm. He cites to page 36 for support as well, which is Dr. McWeeney's treatment note from July 2020. Nowhere in that treatment note does Dr. McWeeney state that Plaintiff should not lift or carry more than 10 pounds. Plaintiff states that "Dr. Ellison identified Osgood-Schlatter disease and precluded squatting or kneeling." Pl.'s Br. 5. Yet, in the "history of present illness" portion of Dr. Ellison's exam report, Dr. Ellison summarizes Plaintiff's self-reports that Plaintiff "has had Osgood-Schlatter disease in the left knee and is not able to squat or kneel." Tr. 325. Dr. Ellison did not provide a squatting, kneeling, or crouching limitation himself. In fact, Plaintiff's physical exam with Dr. Ellison revealed "no crepitation, effusion, instability or limited range of motion in either knee." Tr. 326. In the assessment section, Dr. Ellison diagnosed "left knee pain with history of Osgood-Schlatter disease." Tr. 327. Plaintiff also asserts that Dr. Ellison precluded reaching in all directions. Pl.'s Br. 16. Again, Dr. Ellison merely observed Plaintiff's "very limited ability to reach" with his right hand as part of Plaintiff's exam; he did not provide a functional limitation that precluded reaching in all directions.

Plaintiff's shoulder condition with treatment. Tr. 28–29. The ALJ further found that Plaintiff's activities support the limitations provided by the state agency doctors. Tr. 29.

Plaintiff believes that the state agency doctors' limitation of occasional reaching is inconsistent with Dr. Ellison and Dr. McWeeney's notes showing Plaintiff's very limited range of motion and ability to reach. Pl.'s Br. 15. As the ALJ explained, the state agency doctors' limitations are consistent with the objective evidence, namely Plaintiff's conservative treatment and improvement with treatment, as well as his daily activities that suggest more functional ability than alleged by Plaintiff. Regarding Plaintiff's recent x-ray, the ALJ included Plaintiff's left knee osteoarthritis as a severe impairment and referred to Plaintiff's x-ray in his evaluation of the medical evidence, and appropriately limited Plaintiff to light work with only frequent crouching and kneeling, occasional crawling, and no climbing ropes, ladders, or scaffolds. Tr. 21–22, 27. The state agency doctors' limitations are supported by and consistent with the evidence of record, and the ALJ's decision giving their opinions weight is therefore affirmed.

Plaintiff's final contention that the ALJ ignored the medical evidence from Dr. McWeeney and Dr. Ellison's exams is unfounded. The ALJ included in his decision an individual discussion of each of Plaintiff's visits to Dr. McWeeney as well as Plaintiff's visit to Dr. Ellison. Tr. 23–27. He further relied on those visits in his analysis of Plaintiff's symptom testimony. Tr. 27–28. After considering the entire record, the ALJ properly limited Plaintiff to light work with additional postural and manipulative limitations. Tr. 22.

Overall, Plaintiff offers a competing interpretation of the evidence. The ALJ's weighing of the medical evidence, however, is supported by substantial evidence.

13 – OPINION AND ORDER

**III. Job Numbers**

Plaintiff argues that the ALJ failed to identify jobs existing in significant numbers in the national economy at step five. Pl.'s Br. 17. At the hearing, the vocational expert ("VE") identified three jobs Plaintiff could perform: Cashier II, Host, and Plastic Products Inspector. Tr. 75–76. Plaintiff first contends that the Cashier II job is incompatible with Plaintiff's limitation of occasional use of his right arm because the Bureau of Labor Statistics defines Cashier II work as often repetitive. Pl.'s Br. 17. Plaintiff next asserts that the Host job is incompatible with Dr. Ellison and Dr. McWeeny's opinions limiting Plaintiff to no kneeling or crouching. *Id.* Plaintiff concludes that a single occupation, Plastic Products Inspector in this case, fails to support a "significant range of work."[6] *Id.*

Plaintiff's argument is unavailing. First, Plaintiff's lay interpretation of the Bureau of Labor Statistics is insufficient to rebut the VE's testimony that a person with Plaintiff's limitations, including only occasional reaching with the right arm, can perform the job of Cashier II. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony."). In light of Plaintiff's right arm limitations, the VE specifically testified that this work can be performed primarily with the left hand. Tr. 75. And even if the Cashier II job were eliminated, Plaintiff's contention that he could not perform the Host job is based on his argument that Dr. Ellison and Dr. McWeeney precluded kneeling and crouching. As explained above, neither doctor provided those limitations. The ALJ appropriately evaluated the evidence relating to Plaintiff's left knee and construed Plaintiff's RFC accordingly.

---

[6] The Court notes that Plaintiff relies on the "significant range of work" standard under 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00(c), which applies in cases with individuals of advanced age. *See Maxwell v. Saul*, 971 F.3d 1128, 1131 (9th Cor. 2020). As explained below, Plaintiff was not an individual of advanced age at the time the ALJ rendered his decision and the ALJ did not err in not applying the higher age category.

14 – OPINION AND ORDER

### **IV. Age Category**

Plaintiff finally argues that the ALJ erred by disregarding the age category change Plaintiff was going to experience eight months after the hearing. Pl.'s Br. 18. Plaintiff would turn 55 years old, which Plaintiff claims would have rendered him disabled under existing regulations. *Id.* There are three age categories under the social security regulations: younger persons (under age 50), closely approaching advanced age (ages 50–54), and advanced age (55 and older). 20 C.F.R. § 404.1563(c)–(e). "Where a claimant is within a few days or a few months of reaching an older age category (a "borderline situation"), an ALJ has discretion, but is not required, to use the older age category." *Lockwood v. Comm's Soc. Sec. Admin.*, 616 F.3d 1068, 1069 (9th Cir. 2010) (finding that the ALJ did not err by not using the advanced age category when the claimant was just one month away from turning 55 years old). "Although an ALJ is required by regulation to *consider* whether to use an older age category in a borderline situation, there is no requirement that the ALJ explain in her written decision why she did not use an older age category." *Id.* at 1070.

Here, the ALJ included in his decision Plaintiff's date of birth and found that he was 49 years old on the alleged disability onset date. Tr. 29. The ALJ then noted that Plaintiff subsequently changed age categories to closely approaching advanced age, citing 20 C.F.R. § 404.1563. *Id.* The Court finds the ALJ did not err by not using the advanced age category. Plaintiff was eight months away from turning 55 at the time of the ALJ's decision, which is not within "a few days or a few months" of reaching an older age category. Because this was not a "borderline situation," the ALJ was not required to consider the advanced age category. Further, even if it were a borderline situation, the ALJ was not required to articulate why he did not use an older age category. *See Lockwood*, 616 F.3d at 1070.

## **CONCLUSION**

For the reasons explained herein, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 22nd day of March, 2023.

                                                      **s/Michael J. McShane**
                                                    Michael J. McShane
                                                    United States District Judge